UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| AMANDA L. BRAGG, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | 1:10-cv-00254-JAW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Amanda Lee Bragg, a younger individual in her 20s, has severe impairments consisting of mood disorder and anxiety disorder, with a history of substance abuse, but retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Bragg's application for supplemental security income benefits under Title XVI of the Social Security Act. Bragg commenced this civil action to obtain judicial review of the final administrative decision, alleging error in the Judge's residual functional capacity finding. I recommend that the Court affirm.

### Standard of Review

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's

findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**The Administrative Findings**

The Commissioner's final decision is the January 28, 2010, decision of Administrative Law Judge Guy E. Fletcher because the Decision Review Board did not complete its review during the time allowed. Judge Fletcher's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 7-2, R. 1.[1])

At step 1 of the sequential evaluation process, the Judge found that Bragg has not engaged in substantial gainful activity since March 26, 2008, the application date. (Finding 1, R. 9.) At step 2, the Judge found that Bragg's alleged impairments of mood disorder, anxiety disorder, and history of alcohol and drug addiction, "not material to disability," all cause more than a minimal limitation in Bragg's ability to perform basic work activities. (Finding 2, R. 9.) At step 3, the Judge found that the degree of impairment is not sufficient to meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (Finding 3, R. 9.)

As for residual functional capacity (RFC), the Judge found that Bragg's combined impairments do not reduce or restrict her exertional capacity, but do result in a non-exertional limitation to unskilled work requiring social interaction with only a few co-workers. (Finding 4, R. 10.) Because Bragg has no past relevant work to measure against this RFC at step 4, the Judge made his disability determination at step 5. (Finding 5, R. 12-13.) Relying on vocational

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 7.

expert testimony, the Judge found that Bragg's RFC and vocational profile enable her to engage in substantial gainful employment, including as a floor cleaner, photocopy operator, and hotel cleaner. (Finding 9, R. 13.)

### Plaintiff's Statement of Errors

In her Statement of Errors, Bragg focuses entirely on the Judge's residual functional capacity finding. Bragg notes that every consultant who performed a psychiatric review for the Administration concluded that her mental impairments were non-severe and that her treating source was the only expert who found a severe impairment. (Statement of Errors at 1-2.) According to Bragg, this left the Judge without any means of making a residual functional capacity finding unless he adopted, wholesale, the opinion of the treating source. Bragg says the Judge erroneously rejected her treatment provider's opinion by making his own lay assessment of the provider's treatment notes. (Statement of Errors at 2-7.) Bragg further argues that the Judge's negative assessment of her credibility is not supported by substantial evidence and that her unstable living situation, treatment history, and prior unsuccessful work attempts all corroborate her allegations. (Id. at 7-9.)

### Oral Argument

Oral argument occurred before the undersigned on June 13, 2011. Counsel for Bragg argued that the opinion of Dr. Fred Risser, M.D., should have received controlling weight in the RFC analysis and that the Judge's effort to explain away Dr. Risser's opinion was misguided in its treatment of Bragg's drug-abuse history, the Judge's independent assessment of Dr. Risser's treatment notes, the Judge's characterization of Community Health and Counseling Services' notes, and Bragg's efforts to maintain sobriety. Bragg's counsel also faulted the Judge for not making a searching assessment of the longitudinal record of GAF scores. The Commissioner

argued that the three psychiatric review techniques performed by Disability Determination Services consultants, all of whom found no severe mental impairment, provide substantial evidence in support of the Judge's rejection of Dr. Risser's opinion and that there is no error in the Judge's decision to credit Bragg's subjective complaints to a limited extent.

**The Evidence**

The medical records reflect that Ms. Bragg has had an unstable support system for a prolonged period, at least from late adolescence through young-adulthood. She has suffered from depressed mood and anxiety and has abused substances such as benzodiazepines and opiates. Medication management using prescription drugs such as Effexor and Seroquel is indicated in the earlier records (Ex. 1F, circa 2004), but eventually this approach was supplemented with a course of Suboxone treatment for addiction (Ex. 3F, circa 2006). Bragg has resisted recommendations that she participate in AA or NA counseling throughout her entire course of psychiatric care. (Ex. 4F, R. 312, 316, 317; Ex. 16F, R. 622.) In 2005, a primary care provider, Dr. Fanburg, MD, expressed the view that Bragg might well be limited from working in high stress jobs or jobs requiring extensive customer interactions, but would not have any physical restriction. (Ex. 3F, R. 309.) He suggested that Dr. Risser be consulted for further psychiatric information. (Id.)

Progress notes from Dr. Risser's office in the 2005-2006 timeframe are not particularly noteworthy. Mostly they describe efforts to maintain sobriety, medication management, and a pleasant and oriented patient. (Ex. 4F.) Dr. Risser's progress notes in the 2007 timeframe are not materially worse, though they stop referring to her as pleasant. (Ex. 9F.) There was one noteworthy family episode in May of 2007, involving her parents' dysfunction, and a July 2007 incident of a reported assault against Bragg by her father, but the vocational implications for

4

Bragg are not apparent.[2]  (R. 404-406, 523.)  Dr. Risser's notes in 2008 are similar to prior notes. (Ex. 16F.)  There is an additional stressor associated with a sister's health and more indication that reliable transportation is a big concern.  (R. 623.)  Transitioning to financial independence and independent living has been very challenging and continued in 2008.  This contributes to depression and anxiety and a lack of confidence, as described by one CHCS caseworker.  (Ex. 10F, R. 482.)  In early 2008, Bragg reported seeking housing from a public shelter in order to secure a place of her own.  (Ex. 16F, R. 630.)

Suboxone therapy continued in 2008 and Bragg reported the occasional panic attack. (Ex. 11F, R. 500, 502; Ex. 16F, R. 632 (same).)  The other substantial stressor concerned the potential loss of government assistance in June of 2008 and what would happen if she lost the government subsidy that has paid for her longstanding suboxone treatment and counseling with Dr. Risser.  (Ex. 16F, R. 624-25.)  Bragg filed for SSI on March 26, 2008.  Dr. Risser reported in his June 4, 2008 progress note that he felt Bragg could not work at present and that it is "hard to sort out her anxiety, ptsd, and characterological issues" despite a few years of half-hour counseling sessions.  (R. 626.)

In May of 2007, Bragg received an updated psychosocial assessment from Community Health and Counseling Services.  (Ex. 8F.)   Bragg's mental status was reported in positive terms.  Her living arrangements were not "stable," but the record does not indicate abuse or other more noteworthy stressors.  (Ex. 8F, R. 384; Ex. 9F, R. 404-406.)  A CHCS mental status assessment of June 2008 is not notably worse than that of 2007, though Bragg's mood was more depressed on the latter occasion.  In many respects the later mental status report simply repeats the same information from the earlier report.  (Ex. 13F, R. 543.)  CHCS progress notes from late-

---

[2] The hearing transcript indicates that Bragg witnessed the death of her uncle at age 11.  (R. 20.)  Her father died in August of 2009.  (R. 35.)

2008 through mid-2009 describe more relatively low-grade concerns, from a disability perspective. (Exs. 20F, 21F.) The mental status description in the June 2009 psychosocial assessment form repeats the content of the 2008 form. (R. 683.) The progress note for March 24, 2009, reflects a desire on the part of treatment providers to begin tapering the suboxone treatment, describing a 3-4 year prescription. (R. 686.)

The first psychiatric review technique (PRT) of record is dated March 23, 2006. Peter Allen, Ph.D., identified medical evidence of affective and anxiety-related disorders, but found the degree of impairment was "not severe." (Ex. 5F.) Lewis Lester, Ph.D., performed the next PRT on May 27, 2008. He, too, identified affective disorder and anxiety disorder, and he also identified the substance addiction disorder. Like Dr. Allen, Dr. Lester considered the evidence of record to depict a level of impairment that is "not severe" for social security purposes. (Ex. 12F.) The third PRT is that of Brenda Sawyer, Ph.D., dated October 30, 2008. Like the other DDS consultants, Dr. Sawyer assessed "not severe" impairments. She identified affective disorder and anxiety-related disorder, without noting a current substance addiction disorder. (Ex. 18F.)

On September 8, 2009, Dr. Risser completed a medical source statement concerning mental residual functional capacity. (Ex. 22F.) He noted multiple mental abilities and aptitudes that were "seriously limited, but not precluded." He described Bragg as someone "unable to meet competitive standards" insofar as setting realistic goals or making plans independently of others. (R. 697-98.) In his explanation, he wrote: "I have known Amanda for about 5 years. She has improved, but I am skeptical she could work full-time." (R. 698.) He believes she would average three absences from work per month. (Id.)

Between October 2008 and March 2009, Bragg received some limited cognitive behavioral therapy from Laurie LaViolette, LCSW-CCS. The records reflect four sessions. (Ex. 23F.) A May 30, 2009, record states that Bragg withdrew against her therapist's advice and states the last visit was March 16, 2009. The same record indicates that services commenced October 27, 2008. (Ex. 23F, R. 699.) The records do not contain any psychiatric insights, but reflect that Bragg missed multiple appointments; perhaps that was the point of the exercise. On the other hand, an early record states that Bragg had a "scheduling dilemma" that created a conflict. (R. 705.) It appears there were a total of four visits.

At the hearing, Bragg testified that she experienced a lack of success in her prior work efforts due to problems with attendance, punctuality, concentration, social interaction, and substance abuse. These problems were most notable in relation to customer service/deli work and predated her suboxone therapy. She states that her anxiety and depression make her want to isolate herself, result in tardy attendance, and undermine appropriate social interaction. (R. 28-33, 36-38.)

**Discussion**

Preliminary to further evaluation of the claimant's alleged disability at steps 4 and 5, the Commissioner must assess the claimant's residual functional capacity (RFC). RFC amounts to "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The measure of a claimant's RFC is a function of "all of [the] medically determinable impairments of which [the Commissioner is] aware," including those found not sufficiently severe for purposes of steps 2 and 3. Id. §§ 404.1545(a)(2), 416.945(a)(2). In general, the claimant is responsible for providing the medical evidence needed to make the RFC finding, though the Commissioner has an obligation to facilitate the development of the record,

such as by arranging for consultative examinations, as needed, and referring the medical records for expert review and assessment. Id. §§ 404.1545(a)(3), 416.945(a)(3).

The Judge's residual functional capacity finding is based on the existence of a history of polysubstance abuse and present conditions of mood disorder and anxiety disorder. The Judge's material RFC finding is that these mental impairments restrict Bragg to unskilled employment requiring social interaction with only a few co-workers. Bragg challenges the RFC finding, but does not make a separate argument for error at step 5, in the event that the RFC finding is affirmed. For reasons that follow, I recommend that the Administrative Law Judge's decision be affirmed and that judgment enter for the Commissioner.

A.  **Substantial Evidence**

In his decision, the Judge was careful to note that "a very dysfunctional family situation" exists and that Bragg suffers from "poor motivation to either work or get better." (R. 11.) The record certainly contains substantial evidence in support of these lay assessments. The Judge also found that these circumstances do not persuasively demonstrate that Bragg cannot work. (Id.) That finding cannot be based exclusively on a lay assessment of the medical records. However, the three PRTs performed by the Disability Determination Services consultants supply substantial medical evidence in support of this finding. The Judge reviewed the medical records and basically found them unremarkable, or "relatively benign and non-specific, and not descriptive of a mental impairment that would preclude all work." (Id.) This lay assessment of the contents of the medical records is valid because the medical consultants who performed the PRTs were of the same opinion. A reasonable mind might well accept this evidence and this line of reasoning.

8

**B. Departure from Consulting Expert Opinion and Conflicting Treating Source Opinion**

Bragg contends that the PRT opinions have no weight here because the Judge did not agree that there are absolutely no severe mental impairments. She contends that Dr. Risser's treating source statement must receive controlling weight in this kind of presentation.

The Commissioner's regulations promise that controlling weight will be given to the opinion of a treatment provider, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 416.927(d)(2). In this case the Judge correctly found that the longitudinal treatment record simply fails to support Dr. Risser's assessment of mental functional capacity. This finding, again, is adequately bolstered by the PRTs of record.

In order to find a residual functional capacity restricted to unskilled jobs and limited social demands, the Judge was also able to consider Bragg's subjective report of symptoms, the "skeptical" assessment offered by Dr. Risser, and what "all of the available evidence" suggests. 20 C.F.R. § 416.929(a). This regulatory leeway allows an administrative law judge to partially credit a claimant's presentation about the severity of mental health symptoms without being forced to accept every finding in a treating source statement, at least where the assessment of the consulting experts is that a severe impairment is not demonstrated in the treatment records and the treating source's opinion is not backed by a treatment record that could fairly be regarded as "well-supportive" of a disability finding.[3]

---

[3] The Globalized Assessment of Functioning (GAF) scores that Bragg has called to the Court's attention do not have sufficient weight to counter this outcome. Jones v. Astrue, No. 1:10-cv-179-JAW, 2011 U.S. Dist. Lexis 35038, 2011 WL 1253891 (D. Me. Mar. 30, 2011) (Mag. J. Rec. Dec., adopted Apr. 19, 2011). I also note that they appear, of all places, on minimalist "diagnostic review" forms used by a service provider to justify a patient's eligibility for services rather than on a treatment or progress note. (Ex. 8F, 13F, R. 386-88, 544-45, 553.) A GAF

**Conclusion**

Because there is no error in the Judge's RFC finding and there is no separate allegation of step 5 error, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 23, 2011

---

higher than 50 makes the patient ineligible for services, according to these documents.